UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - -
                                    x

UNITED STATES OF AMERICA            :
                                    :
        - v. -                      :
                                    :    SENTENCING MEMORANDUM
ZION COHEN                          :
                                    :    08 Cr. 159 (SCR)
            Defendant.              :
                                    :- - - - - - - - - - - - -
                                    :
                                    x



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2008

*BY ELECTRONIC FILING AND FEDERAL EXPRESS*

Hon. Stephen C. Robinson
U.S. District Court Judge
United States Courthouse
300 Quarropas St., Room 633
White Plains, NY 10601
(914) 390-4177

      Re: United States v. Zion Cohen (08 Cr. 159 (SCR))

Dear Judge Robinson:

      This letter sets forth 1) the government's position with regard to the facts relevant to Zion Cohen's sentencing; 2) the government's Sentencing Guidelines analysis; and 3) the government's sentencing recommendation.

**I.**    **INTRODUCTION**

      Zion Cohen attempted to evade substantial taxes for 1999, 2000 and 2001 by filing false corporate and personal income tax returns. In order to deter the defendant and other would-be false tax return preparers, and in order to promote respect for this country's tax laws, the government recommends a sentence of incarceration within the range of 18 to 24 months, along with a fine and restitution.

      The United States Court of Appeals for the Second Circuit has set forth the required sentencing considerations in the wake of United States v. Booker, 543 U.S. 220 (2005). After the Booker decision, which held that the United States Sentencing Guidelines ("USSG") are advisory, a sentencing judge must first analyze the Sentencing Guidelines, giving both parties an opportunity to argue for whatever sentence may be appropriate. The sentencing judge should then consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a) to determine whether they support a sentence requested by either party. See United States v. Cutler, 2008 WL 706633, at *18 (U.S. March 17, 2008)(citing Gall v. United States, __ U.S. __, 128 S.Ct. 586, 596 (2007).

      The government explains below its view of the proper consideration in this case of the

-1-

advisory guideline range and of the Section 3553(a) factors, which support a within-guideline
sentence in this case.

## II.     BACKGROUND

On February 27, 2008, the defendant waived his right to be charged by indictment and
entered a guilty plea to a one-count information charging him with attempting to evade a substantial
portion of his 2000 and 2001 individual income taxes in violation of 26 U.S.C. § 7201.  There is a
plea agreement between the defendant and the government.  Sentencing is presently scheduled for
June 11, 2008.

## III.    STATEMENT OF FACTS

During the relevant time period, Cohen owned and operated three Subchapter S corporations,
which provided locksmithing and garage door sales and repair services in and around the Hartsdale,
New York area.  Cohen maintained two separate bank accounts for each corporation and disclosed
information relating to only one account for each corporation to his tax return preparer.  By failing to
disclose these separate bank accounts to his tax return preparer, Cohen caused the preparation and
filing of false corporate tax returns for each of Cohen's corporations for tax years 1999, 2000 and
2001, and false individual income tax returns for Cohen for tax years 1999, 2000 and 2001.  This in
turn led to the underpayment of a substantial portion of Cohen's tax liabilities for these years.  For
tax years 2000 and 2001, the years covered by the Information, Cohen owes additional taxes of
$184,882 and $18,437, respectively.

Cohen spent portions of the money from the concealed accounts on personal expenses or
funneled them into a fraudulently established personal brokerage account with Quick & Reilly.
Cohen falsely filed a Form W-8 with Quick & Reilly when he opened his personal brokerage account
by certifying that he was not a U.S. citizen, he was not a permanent U.S. resident, he did not have a
social security number, and his permanent address was in Israel.  These false certifications, made
under penalty of perjury, were made in an attempt to establish that Cohen was a foreign person and
not subject to 1099 reporting requirements.

## IV.    SENTENCING GUIDELINES COMPUTATION

Initially, it must be determined which Guidelines Manual is to be applied in calculating
Cohen's sentencing range.  Generally, the guidelines in effect at the time of sentencing should be
used, unless their application results in a potentially harsher sentence, in which case the guidelines in
effect at the time of the offense should be applied.  See United States Sentencing Commission,
Guidelines Manual, §1B1.11 (Nov. 2001).  The most recent offense for which Cohen was convicted
occurred in 2001.  There have been no substantive changes to the guidelines manual that are relevant
to the instant offenses of conviction since 2001; therefore, the applicable guidelines manual is the
Guidelines Manual of November 1, 2007, the manual that will be in effect at the time of sentencing.

### A.     Base Offense Level

The base offense level for Cohen is determined by referencing the Guidelines section

-2-

applicable to the offenses of conviction.  Here, since the offense of conviction is the attempted evasion of assessment of individual income taxes in violation of 26 U.S.C. § 7201, the applicable guidelines section is 2T1.1.  Under USSG § 2T1.1, the base offense level corresponds to the "tax loss" attributable to the offense of conviction (attempting to evade the assessment of 2000 and 2001 individual income taxes) and relevant conduct under § 1B1.3 (attempting to evade the assessment of 1999 individual income taxes).  The "tax loss" for Sentencing Guidelines purposes is made up of three components.  First, the amount of unreported ordinary income attributable to Cohen's wholly owned corporations, Hartsdale Locksmith, Inc., Elite Locksmith, Inc. and Elite Garage Doors, Inc., which should have been reported on Line 17 of Cohen's 1999, 2000 and 2001 individual income tax returns was determined, and the tax due on those funds calculated.  Based on this computation, Cohen under reported his individual income taxes by $99,237 for 1999, $184,882 for 2000 and $9,429 for 2001.  Second, it was determined that $695,000 in cash drawn on the Elite Locksmith account at HSBC Bank during 2001 was used to pay cash wages to employees of Zion Cohen's companies, and that FICA and Medicare taxes of $106,335 are due on those wages.  Based on this analysis, the "tax loss" caused by the defendant's conduct for guidelines purposes is $399,883.  Under USSG § 2T4.1, a tax loss of more than $200,000 but less than $400,000 corresponds to an offense level of 18.

The government is required to prove all facts pertaining to sentencing by a preponderance of the evidence.  See United States v. Salazar, 489 F.3d 555, 557 (2d Cir. 2007).  Where the tax loss is uncertain, courts are permitted to make a reasonable estimate of the loss based on the facts available.  See USSG §2T1.1 comment. (n.1).  A district court's tax loss calculation is reviewed for clear error.  See United States v. Gomez, 31 F.3d 28, 31 (2d Cir.1993).

### B.    Acceptance of Responsibility

Pursuant to USSG §3E1.1(b), a 2-level reduction is warranted based upon the defendant's acceptance of responsibility.  Furthermore, an additional 1-level reduction is warranted, pursuant to USSG § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  The defendant's offense level is therefore reduced to fifteen.

### C.    Criminal History

Based upon the information now available to the U.S. Attorney's Office (including representations made by the defense), the defendant has zero criminal history points.  Accordingly, his criminal history category is I.

### D.    Supervised Release

As Cohen was convicted of a Class D felony, the maximum term of supervised release following imprisonment is three years.  18 U.S.C. § 3583(b); see also USSG §5D1.2(a)(2) (calling for a term of supervised release of at least 2 years, but not more than 3 years).

### E.    Restitution and Fine

The parties have stipulated that the Court shall impose an order of restitution in the amount of the taxes, penalties and interest due for the years 2000 and 2001, in an amount not to exceed $527,298.

After determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2.  For an offense level of 15, the Sentencing Guidelines authorizes a fine of between $4,000 and $40,000.  USSG §5E1.2(c).

### F.    Upward or Downward Departures

Pursuant to the plea agreement, the parties have agreed that neither a downward nor an upward departure from the Sentencing range set forth above is warranted.  Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein.  Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court *sua sponte* consider such a departure or adjustment.

The parties further agree that a sentence within the Stipulated Guidelines range, as set forth above, would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, § 3553(a).  However, the parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

## V.    CONSIDERATION OF THE 3553(A) FACTORS

The defendant engaged in serious offenses.  His conduct in concealing his income from the government by filing false corporate and individual income taxes caused a loss to the government of nearly $400,000.  Further, he falsified Forms W-8 in order to further mislead the government.  His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus in consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a sentence that falls within the range suggested by the sentencing guidelines.

It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  § 3553(a)(2).  Since this country's tax collection system is based on voluntary compliance, the need to promote respect for the law is of primary importance.  The recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense.  Id.  Further, a guideline sentence would deter the defendant, who continues to claim that another individual was primarily responsible for the commission of the crimes to which he has pled guilty, from committing similar crimes in the future.  A probationary sentence, on the other hand, would send an undesirable message; that the profit one can gain by committing tax crimes is worth the risk of getting caught and receiving probation.

-4-

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D ).  The Court can certainly order the defendant to comply with mental health or drug treatment during any period of supervised release that will follow his incarceration.  Further, while the Court should order the payment of not more than $527,298 in restitution to the IRS as a condition of supervised release, this is not an issue that would militate against a period of incarceration in this case.  § 3553(a)(7).

While there are many 3553(a) factors that would be addressed by the imposition of a period of incarceration within the range recommended by the guidelines, the defendant has not set forth any persuasive argument for leniency.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence.

## A.    The Continued Importance of the Sentencing Guidelines

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing.  While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 2007 WL 4292040, at *5 (U.S. Dec. 10, 2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at *14 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court recently stated:  "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 2007 WL 4292040, at *14 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable.  While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case.  That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463.

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.  This concept is widely recognized in other circuits.  As the Third Circuit explained:

-5-

Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of Booker that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." Booker, 543 U.S. at 264-65. The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the Booker Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" Cooper, 437 F.3d at 331 (quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 2007 WL 4292116, at *7 n.6.

The Supreme Court's recent decisions in Gall and Kimbrough do not change this analysis. As is evident from the quotations above, these cases reaffirmed the importance of consideration of the guidelines by district courts, along with all other 3553(a) considerations. Gall was actually focused on the scope of appellate review: the Supreme Court held that appellate courts must review sentences deferentially, under an abuse of discretion standard, whether such sentences are within or outside the advisory ranges. While this ruling may result in more frequent affirmance of district court decisions, it does not relieve the district courts of their primary responsibility, as explained in the Supreme Court decisions, to properly assess and consider all sentencing factors, including the advisory guideline range, and to give careful consideration to that range.

Thus, the Gall Court instructed:

It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

Gall, 2007 WL 4292116, at *6.[1]

---

[1] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at *7.

-6-

Likewise, the Court's decision in <u>Kimbrough</u>, issued on the same day as <u>Gall</u>, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. In <u>Kimbrough</u>, the Court held that the guidelines for crack cocaine offenses are advisory, and that a sentencing court in such a case may consider, among other factors, the criticism stated by the Sentencing Commission and others of those particular guidelines. Responding to an assertion that such case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. <u>See Gall</u>, ante . . . .

<u>Kimbrough</u>, 2007 WL 4292040, at *13 (emphasis in original). Needless to say, fidelity to the guidelines is the only available means of carrying out this mandate.

Further, <u>Kimbrough</u> did not encourage wholesale abandonment of guideline sentencing. To the contrary, <u>Kimbrough</u> narrowly focused on sentencing for crack cocaine offenses. With respect to those offenses alone, the Court suggested that the guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area. Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." <u>Id.</u> at *14 (quoting <u>Rita</u>, 127 S. Ct. at 2465). These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing experience and provide a useful measure for determining appropriate and consistent punishments.

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, <u>see</u> § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained in detail earlier, there are no other 3553(a) factors in this particular case which militate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guideline punishment.

Accordingly, the government respectfully recommends a sentence within the range of eighteen to twenty-four months' imprisonment, a fine within the range recommended by the sentencing guidelines, and restitution in the amount not to exceed $527,298.

## VI.    <u>SENTENCING RECOMMENDATION</u>

Based on a calculated total offense level of fifteen, the government recommends a sentence within the guidelines range of eighteen to twenty-four months incarceration. Moreover, the

government recommends imposition of a fine between $4,000 and $40,000.  Following the period of incarceration, the government recommends a period of supervised release of three years.  In addition to the standard conditions of release, the government will request that the Court impose the conditions of release recommended by the Probation Office.  Finally, the government will request that the Court order restitution in an amount not to exceed $527,298.

Very Truly Yours,

MICHAEL J. GARCIA
United States Attorney,
Southern District of New York


By:     s/Michael P. Ben'Ary
        Michael P. Ben'Ary
        Special Assistant United States Attorney


cc:     *via Electronic Filing and E-mail*
        Lawrence L. Maffei
        Hudson Valley Bank Building
        35 East Grassy Sprain Road
        Yonkers, NY 10701
        (914) 961-1515
        larry@maffeikeating.com

-8-